UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>NATIONAL EASTERN CORPORATION | Chapter 11 |
| Debtor | Case No. 07-21290 |

| | |
|---|---|
| WHITE OAK CORPORATION, CONNECTICUT SAND AND STONE CORPORATION, ATLANTIC PIPE CORPORATION, DOUBLEWAL CORPORATION, NATIONWIDE BRIDGE CO., INC., NATIONAL EASTERN CORPORATION, ROGER TOFFOLON TRUST, and ROGER TOFFOLON | Adversary Proceeding |
| Plaintiffs | No. 08-2004 |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA., AMERICAN HOME ASSURANCE COMPANY, AIU INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NEW HAMPSHIRE INSURANCE COMPANY, AIG TECHNICAL SERVICES, INC., TORRE, LENTZ, GAMELL, GARY & RITTMASTER LLP, MARK S. GAMELL, MICHAEL S. TORRE, and GEORGE W. RETTIG | |
| Defendants | |

**APPEARANCES:**

Maximino Medina Jr., Esq.
Zeldes Needle & Cooper, P.C.
1000 Lafayette Boulevard, P.O. Box 1740, Bridgeport, CT 06601
Counsel for Plaintiff White Oak Corporation

Patrick M. Birney, Esq.
Thelen Reid Brown Raysman & Steiner LLP
City Place II, 10th Floor, 185 Asylum Street, Hartford, CT 06103
Counsel for Removing Defendants

Jeffrey Hellman, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue, P.O. Box 3186, Bridgeport, CT 06605
Counsel for Defendant George W. Rettig

### RULING ON MOTIONS TO ABSTAIN OR REMAND

**KRECHEVSKY, U.S.B.J.**

**I.**

Before the court are the motions of plaintiff White Oak Corporation ("White Oak") and defendant George W. Rettig ("Rettig") to abstain and remand to state court the captioned adversary proceeding which was removed to the bankruptcy court, pursuant to 28 U.S.C. §1452(a), by defendants American International Group, Inc., National Union Fire Insurance Co. of Pittsburgh, PA, American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, The Insurance Company of the State of Pennsylvania, New Hampshire Insurance Company, and AIG Technical Services, Inc. (such defendants, all of which are affiliated, are hereafter referred to collectively as "AIG").

2

II.

## BACKGROUND

National Eastern Corporation ("the debtor"), an affiliate of White Oak, filed a petition under Chapter 11 of the Bankruptcy Code on September 17, 2007. The captioned plaintiffs (collectively "the plaintiffs") consist of White Oak, five of its corporate affiliates (including the debtor) (collectively "the plaintiff companies"), White Oak's president Roger Toffolon, and a trust bearing his name. White Oak is a "heavy construction contractor specializing in road, dam, and bridge construction." (Complaint ¶21.) As such, it was required to provide bonds guaranteeing its performance and its payments for labor and materials for various projects it undertook.

The captioned defendants are American International Group, Inc. and seven of its corporate affiliates (collectively "AIG"), a law firm retained by AIG, and three attorneys employed by such law firm. AIG provided performance and payment bonds on behalf of White Oak. In connection with such bonds the plaintiff companies, in 1992, also executed a general agreement of indemnity with AIG under which they jointly undertook to indemnify AIG for any amounts AIG paid out to claimants under the bonds issued on behalf of White Oak.

White Oak was the successful bidder on two major construction projects for the Connecticut Department of Transportation ("the DOT"). In 1994, White Oak was awarded a contract for $87,868,378.10 to replace a bridge in the New Haven area; and in 1997, it received a contract for $47,797,123.25 for a highway project in the Bridgeport area (together "the DOT projects"). AIG provided performance and

3

payment bonds for both DOT projects. Both projects encountered delays and, by 1999, White Oak was experiencing financial difficulties. White Oak was unable to complete the DOT projects and AIG made payments pursuant to the bonds. In consideration of AIG's forbearance in taking action to recoup the bond losses from the plaintiffs and of its making advances to White Oak to meet its payroll and other necessary expenses, the parties, in 1999, amended the indemnity agreement to provide AIG with security interests in the real and personal property of the debtor and other plaintiff companies.

The plaintiffs commenced the present action by filing a complaint, dated November 30, 2006, against AIG and its attorneys in the Connecticut Superior Court ("the state court") concerning the defendants' performance under the bonds and indemnity agreement. The plaintiffs seek declaratory relief, compensatory and punitive damages, interest, costs, and attorney's fees under eleven counts: (i) breach of the implied covenant of good faith and fair dealing; (ii) tortious interference; (iii) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); (iv) breach of contract; (v) equitable estoppel; (vi) breach of fiduciary duty; (viii) civil conspiracy; (ix) waiver; (x) declaratory judgment; and (xi) professional negligence  The allegations of the complaint center on the conduct of AIG and its attorneys following White Oaks' default on its state contracts. The gist of the complaint is that AIG, rather than acting on White Oak's behalf as it was required to do under the indemnity agreement, acted instead to further its own self-interest to the detriment of the plaintiffs.

AIG, on January 5, 2007, removed the state-court action to the federal District Court claiming diversity jurisdiction. The District Court held that it lacked jurisdiction due to incomplete diversity and, on March 20, 2007, remanded the matter

4

to state court. The state court, on April 10, 2007, assigned the action to its complex litigation docket. Defendant Rettig, on April 25, 2007, filed a motion to dismiss the complaint as to him. The state court, on December 11, 2007, ruled on Rettig's motion, granting it as to the CUTPA count and denying it as to the remaining counts. The state court, on September 24, 2007, entered its scheduling order providing for completion of discovery by December 14, 2008; filing of dispositive motions by July 1, 2009; and setting trial, expected to last six to eight weeks, for December 1, 2009.

AIG filed a proof of claim in the debtor's bankruptcy case on January 17, 2008 (amended on January 18, 2008) and, on January 22, 2008, commenced the captioned adversary proceeding by filing a notice of removal with the Bankruptcy Court. Thereafter, plaintiff White Oak and defendant Rettig (together "the objecting parties") filed motions to remand the matter to state court or, in the alternative, abstain.

### III.

### DISCUSSION

### A.

### Relevant Title 28 Statutory Provisions

AIG filed its notice of removal pursuant to 28 U.S.C. §1452(a), which provides, in relevant part: "A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334 gives "the district courts ... original and exclusive jurisdiction of all cases under title 11.... [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157,

under which the district court may refer[1] such matters to the bankruptcy court, provides, in relevant part:

> (b)(1) Bankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments subject to [ordinary appellate] review ....
> (2) Core proceedings include, but are not limited to –
>   (A) matters concerning the administration of the estate;
>   (B) allowance or disallowance of claims against the estate ... and estimation of claims [other than personal injury or wrongful death claims against the estate] or interests for the purposes of confirming a plan under chapter[ ] 11...;
>   (C) counterclaims by the estate against persons filing claims against the estate;
>   ....
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to [ordinary appellate] review....

The objecting parties request that the matter be remanded to the state court under one or more of the following provisions of Title 28:

(1)     remand to the state court pursuant to §1452(b), which provides:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground;

(2)     mandatory abstention pursuant to §1334(c)(2), which provides:

---

[1] The District of Connecticut, on September 21, 1984, entered an order of reference to the bankruptcy courts of this district.

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction; or

(3) discretionary abstention pursuant to §1334(c)(1), which provides, in relevant part:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

## B.

### Mandatory Abstention

"Related-to," or noncore, state-law proceedings commenced in state court, including those removed to the bankruptcy court under §1452(a), are subject to mandatory abstention if they can be timely adjudicated in the state court. Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 448 (2d Cir. 2005). "The first step in a Section 1334(c)(2) abstention analysis is a resolution of whether the proceeding is 'core'.... If this proceeding is non-core, the [bankruptcy] court could refuse to abstain only if the lawsuit could not be timely adjudicated in state court." Id. at 447. The parties disagree on, and have devoted much of their discussion to, whether the captioned proceeding is core or noncore.

Generally, core matters include (1) those "arising under" Title 11, i.e., those asserting rights created by the provisions of the Bankruptcy Code itself, and (2) those "arising in" a bankruptcy case, i.e., matters that would not arise outside the context of

7

the debtor's bankruptcy case. Noncore matters are those "related to" the debtor's bankruptcy case, i.e., those whose outcome could conceivably affect the bankruptcy estate. See Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co., 130 B.R. 405, 407, 409 n.2 (S.D.N.Y.1991). The Supreme Court, in Marathon, held that Congress could not empower the non-Article III bankruptcy courts, without the consent of the litigants, to issue final judgments in traditional contract or tort actions arising under state law and related only peripherally to a bankruptcy case. Northern Pipeline Const. Co. v. Marathon Pipe Line Co. 458 U.S. 50, 102 S.Ct. 2858 (1982) ("Marathon"). The Second Circuit has interpreted the bankruptcy court's core jurisdiction broadly within the constitutional constraints set forth in Marathon. See, e.g., Mt. McKinley, 399 F.3d at 447.

AIG contends that the state-court action is core because (1) it involves the allowance or disallowance of its claim against the debtor, for which it has filed a proof of claim, and (2) is in the nature of a counterclaim by the debtor against AIG. While those issues may be core matters concerning the administration of the bankruptcy estate, they cannot expand the scope of the bankruptcy court's jurisdiction beyond the constitutional limits of Marathon. As Rettig notes, in his brief, neither he nor the other attorney or law firm defendants (together "the attorney defendants") are creditors of the debtor or have filed a proof of claim. The situation in regard to such parties, therefore, is strikingly similar to that of the defendants in Marathon, who were being sued by the debtor in the non-Article III bankruptcy court, based upon a prepetition state-law cause of action.

> In Marathon, the plurality opinion held that a non-Article III bankruptcy judge could not adjudicate a pre-petition contract dispute

8

arising under state law against a party that had not filed a proof of claim and was not otherwise related to the bankruptcy proceedings. The plurality explained that "Article III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws," 458 U.S. at 75, and it distinguished between "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," and "the adjudication of state-created private rights, such as the power to recover contract damages," id. at 71.

CBI Holding Co., Inc. v. Ernst & Young (In re CBI Holding Co., Inc.), -- F.3d --, WL 2405702, 23 -24 (2d Cir. 2008).

To hold that AIG's filing of a proof of claim is sufficient to confer upon the bankruptcy court the jurisdiction to render a final judgment against the attorney defendants and the non-debtor plaintiffs "creates an exception to Marathon that would swallow the rule." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir. 1993), cert. dismissed, 511 U.S. 1026, 114 S.Ct. 1418 (1994).

The captioned proceeding raises core issues concerning some of the AIG defendants. Because the proceeding is not entirely noncore, the bankruptcy court is not required to abstain under §1334(c)(2).

### C.

### Permissive Abstention / Remand

"Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion." In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002). Similarly, the removal statute permits remand to the state court "on any equitable ground." 28 U.S.C. §1452(b).

> Courts generally consider the following factors in deciding whether to remand a case based on their discretionary authority to abstain: (1) the

effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants. See Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co., 130 B.R. 405, 407 (S.D.N.Y.1991).

In re 183 Lorraine Street Associates, 198 B.R. 16, 32 (E.D.N.Y. 1996).

The court finds that remand would not impede, and would likely aid, administration of the bankruptcy estate, particularly in light of the bankruptcy court's inability, in the absence of all parties' consent, to enter judgment on noncore issues. Although the bankruptcy court may hear such matters and issue proposed findings of fact and conclusions of law, final orders and judgment must be entered by the district court after de novo review. Such process could result in parties having to relitigate before the district court matters already heard by the bankruptcy court. On the other hand, the state court has already acted on a number of preliminary matters. Of particular note is that the state-court scheduling order set the deadlines for discovery and dispositive motions and the date for trial at the earliest of such dates proposed by either plaintiffs or defendants.

All of the claims asserted in the complaint, as well as those set forth in AIG's proof of claim (which it stated it intends to assert as a counterclaim), are based on state-law tort and contract law and all contracts and conduct complained of occurred prepetition. The only basis for federal question jurisdiction is that the debtor, who was one of the guarantors of White Oak's note, subsequently filed a bankruptcy petition.

The parties do not claim that the captioned proceeding presents any unsettled issues of state law. Comity is a factor to the extent that the state likely has an interest

10

in overseeing the interpretation and operation of state highway construction contracts, which form the basis from which all of the parties' claims and counterclaims arise.

As discussed, supra, federal bankruptcy law did not give rise to any of the parties' claims; the only core bankruptcy matters raised are the allowance/disallowance of AIG's contract claim and that the allegations of the complaint could be considered a counterclaim thereto. The substance of the parties' claims arises solely under state law and is, thus, not closely tied to any substantive issues attributable to the bankruptcy case.

The state-court action has been set down for a jury trial, with three weeks set aside in the scheduling order for jury selection. The bankruptcy court is constitutionally prohibited from holding a jury trial in noncore matters. In re Orion Pictures Corp., 4 F.3d at 1101. If this court declines to remand the proceeding to state court, the non-removing parties could not, in the bankruptcy court, exercise their right to a jury. Having to request withdrawal of the reference in order to obtain a jury trial in the district court would impose an additional burden on such parties. The court finds that AIG, however, would not be prejudiced by a remand.

> Of course, the list of factors is non-exclusive and was developed simply as a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of "equit[y]," "justice" and "comity" involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances.

Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 2004 WL 1048239, 3, 43 Bankr.Ct.Dec. 22 (S.D.N.Y. 2004). Under all of the circumstances concerning this proceeding, e.g., the number and relationships of the parties to each other, to the debtor, and to the bankruptcy case, the number of issues, the state's interest in

11

overseeing the proceedings arising out of its public works contracts, that the issues raised by the complaint arise solely under state law, that the state court has already ruled on Rettig's motion to dismiss, has entered its scheduling order, and has set aside considerable time to conduct a jury trial, the court, in the exercise of its discretion, finds it appropriate to abstain and remand the proceeding to state court.

IV.

## CONCLUSION

In accordance with the forgoing discussion, the court concludes that the motions of White Oak and Rettig are granted. The court hereby abstains from hearing the captioned adversary proceeding and remands the matter to state court, in accordance with §1334(c)(1) and §1452(b) of Title 28 of the United States Code. It is

SO ORDERED.

Dated at Hartford, Connecticut this 9 day of July, 2008.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE